UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------

MARKUS MEYENHOFER and
ANDREW RAGLAND,

               Plaintiffs,

    v.

LARSEN & TOUBRO INFOTECH LTD., and
LARSEN & TOUBRO INFOTECH LLC,

               Defendants.


---------------------------------------------------

Case No. 1-19-cv-9349 (ajn)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND STRIKE CLAIMS**


Complaint Filed:  October 9, 2019
Amended Complaint filed:  December 19, 2019

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT .............................................................................. 1

II.    SUMMARY OF ALLEGATIONS ........................................................................ 3

III.    LEGAL STANDARD ......................................................................................... 4

IV.    AS A SUBCONTRACTOR, MEYENHOFER CANNOT MAINTAIN A CLAIM UNDER EITHER TITLE VII (COUNTS TWO AND THREE) OR SECTION 1981 (COUNT ONE) ............................................................................ 5

V.    IF MEYENHOFER WAS AN EMPLOYEE OF LTI, ALL REFERENCES TO "CONTRACTORS" IN THE AMENDED COMPLAINT MUST BE STRICKEN............................................................................................................ 7

VI.    NEITHER PLAINTIFF CAN BRING CLAIMS (COUNTS ONE, TWO AND THREE) BASED ON ALLEGATIONS OF DISCRIMINATION IN HIRING ................................................................................................................ 8

VII.    "U.S. CITIZENS" ARE NOT A PROTECTED CLASS UNDER SECTION 1981 (COUNT ONE) BY VIRTUE OF THEIR STATUS AS SUCH AND U.S. CITIZENS CANNOT BRING CLAIMS FOR "ALIENAGE" DISCRIMINATION UNDER SECTION 1981 ....................................................... 9

VIII.    PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF ................ 11

IX.    IMPERTINENT ALLEGATIONS REGARDING ALLEGED VISA FRAUD, WITH NO BEARING ON THE ALLEGATIONS OF DISCRIMINATION, SHOULD BE STRICKEN ................................................. 12

X.    CONCLUSION ................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Conboy*,
156 F.3d 167 (2d Cir. 1998)..................................................................... 9, 10

*Anyan v. N.Y. Life Ins. Co.*,
192 F. Supp. 2d 228 (S.D.N.Y. 2002)............................................................ 5

*Ayiloge v. City of New York*,
2002 US. Dist. LEXIS 11807 (S.D.N.Y. June 28, 2002) ............................ 10

*Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*,
2007 U.S. Dist. LEXIS 42639 (S.D.N.Y., June 11, 2007) ......................... 13

*Biran v. JP Morgan Chase & Co.*,
2002 U.S. Dist. LEXIS 17076 (S.D.N.Y. Sept. 12, 2002)........................... 13

*Brown v. Coach Stores*,
163 F.3d 706 (2d Cir. 1998)......................................................................... 8

*Chaiffetz v. Robertson Research Holding, Ltd.*,
798 F.2d 731 (5th Cir. 1986) ...................................................................... 10

*Delaremore v. Zimmer, Inc.*,
2019 U.S. Dist. LEXIS 182748 (E.D.N.Y. Oct. 22, 2019)............................ 5

*Deshawn E. by Charlotte E. v. Safir*,
156 F.3d 340 (2d Cir. 1998)........................................................................ 12

*DeSouza v. Park W. Apts., Inc.*,
2018 U.S. Dist. LEXIS 100920 (D. Conn. June 14, 2018)........................... 6

*Domino's Pizza, Inc. v. McDonald*,
546 U.S. 470 (2006)...................................................................................... 6

*Dunn v. URS Corp.*,
2015 U.S. Dist. LEXIS 4923 (S.D.N.Y. Jan. 12, 2015) ............................... 8

*Eisenberg v. Advance Relocation & Storage, Inc.*,
237 F.3d 111 (2d Cir. 2000).......................................................................... 5

# TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Gleason v. Chain Serv. Rest.*,
    300 F. Supp. 1241 (S.D.N.Y. 1969)..............................................................................13

*Goldfine v. Sichenzia*,
    118 F. Supp. 2d 392 (S.D.N.Y. 2000)............................................................................4

*Hubert v. Dep't of Corr.*,
    2018 U.S. Dist. LEXIS 54244 (D. Conn. Mar. 30, 2018) ...........................................6

*Jatoi v. Hurst-Euless-Bedford Hospital Authority*,
    807 F.2d 1214 (5th Cir. 1987) ....................................................................................10

*Juarez v. Northwestern Mutual Life Ins. Co., Inc.*,
    69 F.Supp.3d 364 (S.D.N.Y. 2014)............................................................................10

*Kassman v. KPMG LLP*,
    925 F. Supp. 2d 453 (S.D.N.Y. 2013).........................................................................11

*Lihuan Wang v. Phoenix Satellite TV US, Inc.*,
    976 F. Supp. 2d 527 (S.D.N.Y. 2013)...........................................................................8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)....................................................................................................11

*McLaughlin v. Chong*,
    2016 U.S. Dist. LEXIS 42614 (S.D.N.Y. Mar. 29, 2016) ...........................................5

*Miller v. City of Bridgeport Police Dep't*,
    718 F. App'x 49 (2d Cir. 2017) ....................................................................................6

*New Haven Firefighters Local 825 v. City of New Haven*,
    120 F. Supp. 3d 178 (D. Conn. 2015)...........................................................................6

*Oakley v. Verizon Commc'ns, Inc.*,
    2012 U.S. Dist. LEXIS 12975 (S.D.N.Y. Feb. 1, 2012).............................................11

*Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.*,
    783 F.3d 1045 (6th Cir. 2015) ......................................................................................5

*Robinson v. Blank*,
    2013 U.S. Dist. LEXIS 72068 (S.D.N.Y. Feb. 22, 2013)......................................11, 12

## <u>TABLE OF AUTHORITIES (CONT'D)</u>

<u>Page(s)</u>

*SEC v. Dibella*,
  2005 U.S. Dist. LEXIS 31762 (D. Conn. Nov. 29, 2005) ............................................ 4

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) ..................................................................................................... 8

*Tagare v. NYNEX Network Sys. Co.*,
  994 F. Supp. 149 (S.D.N.Y. 1997) ............................................................................. 5

*Tex. Dep't of Cmty. Affairs v. Burdine*,
  450 U.S. 248 (1981) ................................................................................................... 8

*Tomason v. Stanley*,
  2013 U.S. Dist. LEXIS 148932 (S.D. Ga. Oct. 16, 2013) ............................................ 9

*Vaughn v. City of New York*,
  2010 U.S. Dist. LEXIS 50791 (E.D.N.Y. May 24, 2010) .......................................... 10

*Venkatraman v. REI Sys.*,
  417 F.3d 418 (4th Cir. 2005) .................................................................................... 13

*Vlad-Berindan v. NYC Metro. Transp. Auth.*,
  14cv10304-VEC-FM, 2016 U.S. Dist. LEXIS 13807
  (S.D.N.Y. Feb. 1, 2016) ............................................................................................. 8

*Von Maack v. Wyckoff Heights Med. Ctr.*,
  No. 15 Civ. 3951 (ER), 2016 U.S. Dist. LEXIS 80879
  (S.D.N.Y. June 21, 2016) .......................................................................................... 10

*Walsh v. Nev. Dep't of Human Res.*,
  471 F.3d 1033 (9th Cir. 2006) .................................................................................. 12

**Statutes**

42 U.S.C. § 1981 .............................................................................................*passim*

42 U.S.C. § 1981(a) ............................................................................................... 9

42 U.S.C. § 2000e, *et seq.* ...................................................................................... 4

## <u>TABLE OF AUTHORITIES (CONT'D)</u>

<u>**Page(s)**</u>

**Other Authorities**

Fed. R. Civ. Proc. 12(b)(6) ................................................................................ 4

Fed. R. Civ. Proc. 12(f) .............................................................................. 4, 5

## I.     PRELIMINARY STATEMENT

Plaintiffs Markus Meyenhofer and Andrew Ragland, both Caucasian males born in the United States, are IT professionals.  In their Amended Complaint (Dkt. No. 32), as in their original Complaint, they inappropriately allege that defendants Larsen & Toubro Infotech Limited and its subsidiary, Larsen & Toubro Infotech LLC (collectively, "LTI")— both of whom are India-based technology consulting companies—have discriminated against them on the basis of their race, national origin and their status as "locals."  LTI denies the claims, and at the proper time will demonstrate that Plaintiffs are not victims of discrimination.  At this time, LTI respectfully requests that the Court dismiss or strike claims that are not legally cognizable.  Indeed, the wordsmithing that distinguishes the original Complaint from the Amended Complaint does not compel a different outcome. The following counts or claims should be dismissed or stricken:

First, Meyenhofer must allege whether he is an employee *or* contractor of LTI; the distinction is outcome determinative.  In the initial Complaint, Meyenhofer truthfully admitted that he was a subcontractor for LTI.  Yet in the Amended Complaint, he attempts to now allege (although not clearly) that he was actually a direct LTI employee by striking out his earlier admissions.  If Meyenhofer is a subcontractor, as the allegations in the initial Complaint specify, he cannot bring claims for violations of Title VII, nor could any other putative class member who was a contractor.   Similarly, claims by third-party subcontractors such as Meyenhofer fail under Section 1981 because the actual or proposed contractual relationship required to sustain such a claim is lacking.  If Meyenhofer is a subcontractor, his claims and those of the putative class of contractors he seeks to represent should be dismissed.  If, however, Meyenhofer is alleging that he is a direct employee of LTI based on his interactions with other LTI employees, then at a minimum, all allegations regarding contractors should be stricken from the pleadings.  There would be no named representative to support a class of contractors.

Second, the "failure to hire" claims must be dismissed as to all counts (One, Two and Three).  Ragland cannot assert a claim based on alleged discrimination in hiring because LTI hired him for the only position for which he applied.  As for Meyenhofer, he was admittedly placed in his first position with Emplofy.  This position ended on May 2, 2019.  As for a second position allegedly sought in May 2019, even in the Amended Complaint, Meyenhofer alleges he applied for (but did not secure) this second position "through Quantum [third party vendor]" and not directly through LTI.  Thus, all allegations for discrimination based on "LTI's failure to hire" as to both Plaintiffs, and as to all Counts (One, Two and Three) must be dismissed.

Third, claims asserted on behalf of "U.S. citizens" under Section 1981 (Count One) must be dismissed.  "U.S. citizens" are not a protected class under Section 1981.  While Section 1981 protects against "alienage" discrimination, such a claim is *not* available to U.S. citizens simply by virtue of their citizenship status.

Fourth, Ragland lacks standing to assert claims for injunctive relief because, as a former employee, he cannot show he will be subject to discrimination in the future. Although Meyenhofer alleges he applied to work as a subcontractor for an LTI client, he was not placed by the vendor with LTI. Even if he was at one time an employee of LTI, he is no longer.  Accordingly, his claims for injunctive relief similarly fail as he, too, cannot show he will be subject to discrimination in the future.  The fact that he may be willing to rejoin an LTI project in the future, as he now alleges in the Amended Complaint, does not change the outcome.  To have standing to assert claims for injunctive relief, Meyenhofer must be actively seeking work at LTI as an employee.  Admittedly, he is not.  Accordingly, all claims for injunctive relief should be stricken.

Finally, (inaccurate) allegations that LTI is the "subject of an advanced multiagency federal criminal investigation" related to alleged "fraudulent practices" in connection with securing visas has no place in the Amended Complaint.  Those allegations have no bearing on whether LTI discriminates against non-South Asians, non-Indians, or U.S. citizens.

Plaintiffs have no standing to, and are not bringing claims for, visa fraud. The allegations are a blatant and shameful attempt to embarrass LTI and should be stricken.

## II.    SUMMARY OF ALLEGATIONS

In the initial Complaint, Meyenhofer alleges he was a contractor hired by a third party (Emplofy) to provide IT services for an LTI client between September 2018 and May 2019. Complaint, ¶¶ 23-26. In the Amended Complaint, Meyenhofer alleges he was paid by Emplofy but "was in fact one of LTI's contractual employees." Amended Complaint, ¶ 27. Meyenhofer now also adds in the Amended Complaint that LTI employees provided him with support and training, that LTI "oversaw" his work and "set the length of his workday," and that he "reported to LTI managers, who assigned him tasks and could unilaterally change the scope of his responsibilities." Amended Complaint, ¶¶ 28-29. In the initial Complaint, Meyenhofer alleges "he worked alongside approximately five LTI and Emplofy employees." However, he now alleges in the Amended Complaint that he "worked alongside five other LTI employees," deleting the words "Emplofy employees" from the Complaint altogether. *Compare* Complaint, ¶ 25 with the Amended Complaint, ¶ 32.

In the initial Complaint, Meyenhofer also alleged that he applied for another subcontractor position on May 15, 2019, through a different third party staffing company (Quantum World Technologies) for a placement at an LTI client but was not selected for that subcontractor position. Complaint, ¶ 27. In the Amended Complaint, Meyenhofer alleges that Quantum World Technologies provides "recruiting services," deleting the reference to Quantum's "staffing" role altogether. *Compare* Complaint, ¶ 27 with Amended Complaint, ¶ 35. The Amended Complaint omits that Meyenhofer was "invited" to interview with LTI *after* interviewing with Quantum. *Compare* Complaint, ¶ 27 with Amended Complaint, ¶ 35. The omission suggests that Meyenhofer  interviewed for a position as an LTI employee even though the initial Complaint makes clear the position

would be a contractor position through Quantum.  The Amended Complaint does admit that Meyenhofer "submitted his application [to LTI] through Quantum."  Amended Complaint, ¶ 35.  The Amended Complaint alleges Mr. Meyenhofer was not hired by the "company."  Amended Complaint, ¶ 35.

LTI hired Ragland as an employee in December 2017 for an IT Operations Manager position servicing an LTI client.  Amended Complaint,  ¶ ¶ 37-38.  Ragland's employment was terminated in March 2019 after LTI's client ended the project on which Ragland worked.  Amended Complaint, ¶ ¶ 43-45.

In their Amended Complaint, Meyenhofer and Ragland allege that LTI discriminated against them on the basis of "race and citizenship" in violation of 42 U.S.C. § 1981 (Amended Complaint, ¶ 60), and on the basis of race and national origin in violation of 42 U.S.C. § 2000e, *et seq.* (Title VII) (Amended Complaint, ¶ ¶ 65 and 69).  In their Complaint, Plaintiffs assert claims on behalf of themselves and a putative class of "non-South Asian, non-Indian, and *non-visa holding individuals*…."  Complaint, ¶ 37 (emphasis added).  In the Amended Complaint, Plaintiffs purport to bring claims on behalf of themselves and a putative class of "[a]ll non-South Asian, non-Indian, and *U.S. citizens* who …. were employed by LTI (including contractors)…."  Amended Complaint, ¶ 46 (emphasis added).

## III.    LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is proper when a claim fails to allege a "cognizable legal theory," or fails to plead facts sufficient to support such a theory.  *See Goldfine v. Sichenzia,* 118 F. Supp. 2d 392, 396-97 (S.D.N.Y. 2000); *SEC v. Dibella*, Civil No. 3:04 CV 1342 (EBB), 2005 U.S. Dist. LEXIS 31762, at *6-7 (D. Conn. Nov. 29, 2005).

Further, Rule 12(f) allows a motion to strike when a pleading contains "any redundant, immaterial, impertinent, or scandalous matter."  The function of a motion under

Rule 12(f) is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. *McLaughlin v. Chong,* No. 13-cv-0807 (NSR), 2016 U.S. Dist. LEXIS 42614, at *5 (S.D.N.Y. Mar. 29, 2016) (citing *Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015)).

## IV.   AS A SUBCONTRACTOR, MEYENHOFER CANNOT MAINTAIN A CLAIM UNDER EITHER TITLE VII (COUNTS TWO AND THREE) OR SECTION 1981 (COUNT ONE)

Meyenhofer cannot assert claims for discrimination under Title VII because he admitted in the original Complaint (at ¶¶ 23-26) that he was a contractor, and not an employee of LTI. *See Delaremore v. Zimmer, Inc.,* No. 17-cv-918 (BMC)(RML), 2019 U.S. Dist. LEXIS 182748, at *2-3 (E.D.N.Y. Oct. 22, 2019) (statements in a prior complaint are admissions that may be considered on a motion to dismiss under 12(b)(6)). In the Amended Complaint, Meyenhofer appears to allege, albeit ambiguously, that he became an employee of LTI by virtue of his working relationship with LTI employees. *Compare* Complaint, ¶ 27 with Amended Complaint, ¶¶ 27-30. While his admission in the original Complaint is not conclusively binding, given the ambiguous allegations in the Amended Complaint, Meyenhofer should not be allowed to escape his prior admission that he was a contractor. *See Delaremore,* 2019 U.S. Dist. LEXIS 182748, at *3. Meyenhofer also alleges he applied for a position "through Quantum World Technologies Inc." servicing an LTI client. Complaint, ¶ 27 and Amended Complaint, ¶ 35. Had he secured that second position, he would have become a subcontractor of Quantum and not an LTI employee. *Id.*

It is well-settled law that independent contractors, let alone subcontractors, cannot bring claims under Title VII. *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113 (2d Cir. 2000); *Anyan v. N.Y. Life Ins. Co.*, 192 F. Supp. 2d 228, 238 (S.D.N.Y. 2002); *Tagare v. NYNEX Network Sys. Co.*, 994 F. Supp. 149, 154 (S.D.N.Y. 1997).

Accordingly, as to Meyenhofer, Counts Two and Three for violations of Title VII (disparate treatment and disparate impact, respectfully) must be dismissed.

Similarly, Meyenhofer's claims under Section 1981 fail because as a subcontractor of a third party, he has not and cannot allege the necessary contractual relationship to maintain such a claim against LTI.  "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship."  *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 476 (2006); *see also Miller v. City of Bridgeport Police Dep't,* 718 F. App'x 49, 50 (2d Cir. 2017) (following *Domino's Pizza, Inc.* and affirming dismissal of Plaintiff's Section 1981 claims when she failed to allege "as she must, that she 'has or would have rights under [an] existing or proposed contractual relationship' with the [Defendant]").   The harm alleged cannot arise out of just "somebody's" contract. *Domino's Pizza, Inc.*, 546 U.S. at 476; *see also Hubert v. Dep't of Corr.*, No. 3:17-cv-248 (VAB), 2018 U.S. Dist. LEXIS 54244, at *26-29 (D. Conn. Mar. 30, 2018) (granting motion to dismiss Plaintiff's Section 1981 claims because Plaintiff did not allege a contractual relationship directly with the defendant and therefore had no contractual rights to properly vindicate under Section 1981).

Indeed, the right protected by Section 1981 is "the right – denied in some States to blacks, as it was denied at common law to children – to give and receive contractual rights on one's own behalf."  *Domino's Pizza, Inc.*, 546 U.S. at 475.   Section 1981 does not provide "an omnibus remedy" for all racial injustice.  *Id.* at 479.   Ultimately, it is limited to contracts under which the Plaintiff has cognizable rights.  *Id.*; *DeSouza v. Park W. Apts., Inc.,* No. 3:15-CV-01668 (MPS), 2018 U.S. Dist. LEXIS 100920, at *40-42 (D. Conn. June 14, 2018) (rejecting Plaintiff's Section 1981 discrimination claim because his complaint failed to allege defendant's actions "in any way impaired a contractual relationship" in which Plaintiff had any rights); *New Haven Firefighters Local 825 v. City of New Haven,*

120 F. Supp. 3d 178, 192-96 (D. Conn. 2015) (rejecting Plaintiff's Section 1981 claims based on defendant's contract with a third party because the alleged discriminatory conduct in no way impaired Plaintiff's contractual rights under the identified contract).

Here, the contract alleged by Meyenhofer is between LTI and either Emplofy (Complaint, ¶ 24 and Amended Complaint, ¶ 27) or Quantum World Technologies (Complaint, ¶ 27 and Amended Complaint, ¶ 35) depending on the project at issue. As a subcontractor of either third party, Meyenhofer has no rights, nor is he exposed to any liability, under their agreements with LTI. Rather, these are the very "somebody's contracts" expressly deemed by the U.S. Supreme Court to fall outside the purview of Section 1981. As such, Meyenhofer cannot maintain a Section 1981 claim and his claims should be dismissed from Count One.

## V.     IF MEYENHOFER WAS AN EMPLOYEE OF LTI, ALL REFERENCES TO "CONTRACTORS" IN THE AMENDED COMPLAINT MUST BE STRICKEN

On the other hand, if Meyenhofer argues in opposition that he became an employee of LTI while working for LTI client Broadridge, and the Court accepts his about-face from his contrary admission in the original Complaint, the reference to "contractors" in the Amended Complaint's class definition should be stricken for lack of a class representative. *See* Amended Complaint, ¶ 46. Simply put, if Meyenhofer became an employee of LTI during his tenure at Broadridge, he cannot represent a class of former LTI contractors or subcontractors. Similarly, Ragland alleges only that he was an employee of LTI and never a contractor. Amended Complaint, ¶ 38. And, as shown above, contractors like Meyenhofer cannot avail themselves of a claim under Title VII or Section 1981. Accordingly, if Meyenhofer decides to proceed as a former employee of LTI, neither Meyenhofer nor Ragland are able to represent a class of "contractors" or "subcontractors" (who have no cognizable claim in any event), and the word "contractors" should be stricken from the definition of the purported class. Amended Complaint, ¶ 46. Meyenhofer must

choose between being a former employee, or a former contractor; he should not be allowed to vaguely allege both statuses.

## VI.   NEITHER PLAINTIFF CAN BRING CLAIMS (COUNTS ONE, TWO AND THREE) BASED ON ALLEGATIONS OF DISCRIMINATION IN HIRING

Neither Plaintiff has a valid claim based on discrimination in hiring.  First, Ragland cannot assert a claim based on alleged discrimination in hiring because LTI hired him for the only position for which he applied. [1]   Amended Complaint, ¶ 38.  Thus, Ragland fails to allege a facially viable "hiring" related claim.  *Brown v. Coach Stores*, 163 F.3d 706, 710 (2d Cir. 1998) (Title VII hiring discrimination requires "a plaintiff to allege that she or he applied for a specific position or positions and was rejected therefrom"); *Vlad-Berindan v. NYC Metro. Transp. Auth.*, 14cv10304-VEC-FM, 2016 U.S. Dist. LEXIS 13807, at *21 (S.D.N.Y. Feb. 1, 2016) (citing *Lihuan Wang v. Phoenix Satellite TV US, Inc.*, 976 F. Supp. 2d 527, 537 (S.D.N.Y. 2013); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)) ("[w]hen a plaintiff claims discrimination in the form of a failure to hire, she 'must allege that she applied for an available position for which she was qualified and was rejected under circumstances giving rise to an inference of unlawful discrimination'"); *Dunn v. URS Corp.*, No. 13 Civ. 6626 (ALC)(HBP), 2015 U.S. Dist. LEXIS 4923, at *14 (S.D.N.Y. Jan. 12, 2015) (in dismissing plaintiff's failure to promote claim, the Court observed that a prima facie case of hiring discrimination under Title VII requires that plaintiff applied for *and was rejected from* a position) (emphasis added). Accordingly, the Court should dismiss Ragland's claims (Counts One, Two and Three) based on alleged discrimination in hiring.

---

[1] A class action may not proceed unless the plaintiff who represents the class can show that he personally has been injured, "not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976).

Second, Meyenhofer does not allege he ever applied to LTI.  Instead, he alleges he applied for a subcontractor position through Quantum World Technologies Inc. servicing an LTI client.  Amended Complaint, ¶ 35.  Had he secured that second position, he would have become a subcontractor of Quantum and not an LTI employee.  *Id.*  Accordingly, Meyenhofer also cannot assert a claim based on discrimination in hiring by LTI as he has not alleged any available position for which he applied.  He has alleged the opposite.

Because all claims based on discrimination in hiring are unavailable to Ragland and Meyenhofer, the Court must dismiss or strike in part Plaintiffs' claims for discrimination under Section 1981 (Count One), for disparate treatment under Title VII (Count Two) and disparate impact under Title VII (Count Three) to the extent each of these claims rests on allegations of discrimination in hiring by LTI.

## VII.   "U.S. CITIZENS" ARE NOT A PROTECTED CLASS UNDER SECTION 1981 (COUNT ONE) BY VIRTUE OF THEIR STATUS AS SUCH AND U.S. CITIZENS CANNOT BRING CLAIMS FOR "ALIENAGE" DISCRIMINATION UNDER SECTION 1981

Under their Count One for alleged violations of 42 U.S.C. § 1981, Plaintiffs allege that "LTI has engaged in a pattern or practice of discriminating against individuals who are citizens of the United States…."  Amended Complaint, ¶ ¶ 57 and 60.  Because "U.S. citizens" are not a protected class under Section 1981, LTI should not have to defend a claim premised solely on the Plaintiffs' status as U.S. citizens.

Section 1981 provides in pertinent part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State … as enjoyed by *white citizens*." 42 U.S.C. § 1981(a) (emphasis added).  "The statute's plain language thus speaks only in terms of race and citizenship status." *Tomason v. Stanley*, No. 6:13-cv-42, 2013 U.S. Dist. LEXIS 148932, at *8 (S.D. Ga. Oct. 16, 2013).  Thus, Section 1981 is understood to protect against race and "alienage" discrimination.  *See Anderson v. Conboy,* 156 F.3d 167, 171 (2d Cir. 1998) (alienage discrimination is discrimination on the basis of citizenship).

However, discrimination against U.S. citizens is not discrimination based on "alienage" because U.S. citizens are not "aliens." *See Chaiffetz v. Robertson Research Holding, Ltd.,* 798 F.2d 731, 735 (5th Cir. 1986); *Von Maack v. Wyckoff Heights Med. Ctr*., No. 15 Civ. 3951 (ER), 2016 U.S. Dist. LEXIS 80879, at *46 (S.D.N.Y. June 21, 2016); *Juarez v. Northwestern Mut. Life Ins. Co., Inc.,* 69 F. Supp. 3d 364, 368-69 (S.D.N.Y. 2014) (protections of Section 1981 "extends to all lawfully present *aliens*, whether or not they have a green card"); *Vaughn v. City of N.Y.,* No. 06-CV-6547 (ILG), 2010 U.S. Dist. LEXIS 50791, at *28 (E.D.N.Y. May 24, 2010) (Section 1981 does "apply to discrimination on the basis of alienage, *i.e.* non-U.S. citizenship") (citing *Anderson v. Conboy,* 156 F.3d 167, 170) (2d Cir. 1998)[2]

The Amended Complaint alleges that Meyenhofer and Ragland are U.S. Citizens. Amended Complaint, ¶ ¶ 3, 4.  As U.S. citizens, Plaintiffs are unable to satisfy the prima facie requirements of a Section 1981 alienage discrimination claim.  *See e.g. Ayiloge*, 2002 U.S. Dist. LEXIS 11807, at *48, *52 ("In order to establish a prima facie case of alienage discrimination, Plaintiff was required to show that he is not a citizen of the United States"); *Vaughn*, 2010 U.S. Dist. LEXIS 50791, at *28-29 (recognizing that only non-U.S. citizen plaintiffs would be able to bring a claim for alienage discrimination under Section 1981); *Jatoi v. Hurst-Euless-Bedford Hosp. Auth.*, 807 F.2d 1214, 1219 (5th Cir. 1987) (dismissing Section 1981 alienage discrimination claim because the Plaintiff was a U.S. citizen).

Plaintiffs' claims based on their status as U.S. citizens under Section 1981 should be dismissed.

---

[2] Discrimination based on an individual's status as having been born in the United States is discrimination based on national origin, but Section 1981 does not protect against discrimination based on national origin.  *See Ayiloge v. City of New York,* No. 00 Civ. 5051 (THK), 2002 U.S. Dist. LEXIS 11807, at *16 (S.D.N.Y. June 28, 2002).

## VIII.  PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF

It is axiomatic that a plaintiff must have Article III standing to assert claims for injunctive relief, and that former employees, let alone former subcontractors, lack standing to seek injunctive relief where they have not shown they will be subjected to discriminatory policies by a defendant in the future.  *See Oakley v. Verizon Commc'ns, Inc.*, No. 09 Civ. 9175 (CM), 2012 U.S. Dist. LEXIS 12975, at *41 (S.D.N.Y. Feb. 1, 2012) ("[f]ormer employees lack standing to obtain injunctive relief because they are no longer affected by the challenged policies, and an injunction would do nothing to remedy their past injuries"); *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 465-66 (S.D.N.Y. 2013) ("a plaintiff generally lacks standing to seek injunctive or declaratory relief against his or her former employer, as there is no prospect that he or she will be injured in the future").  To establish a "case or controversy" within the meaning of Article III, a plaintiff must show injury in fact, causation, and a likelihood (as opposed to mere speculation) that the injury will be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992).  The injury in fact must be "an invasion of a legally protected interest which is (a) concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical."  *Id.* at 560 (internal citations omitted).

Here, aside from a mention in the Prayer for Relief, there is no factual allegation by Plaintiffs that they are *actively* seeking reinstatement or work from LTI, or that either of them is presently being harmed by any action of LTI.  Ragland nowhere alleges that he is seeking reinstatement with LTI.  The fact that Meyenhofer alleges he "remains interested" in rejoining an LTI project in the future **if** LTI's alleged "discriminatory conduct ceases" (Amended Complaint, ¶ 36) does not confer Article III standing to seek injunctive relief. *See Lujan,* 504 U.S. at 560 (alleged injury must be "actual or imminent" and not "conjectural or hypothetical"); *see also Robinson v. Blank*, No. 11 Civ. 2480 (PAC) (DF), 2013 U.S. Dist. LEXIS 72068, at *16-17 (S.D.N.Y. Feb. 22, 2013) (former employee must actually seek reinstatement *and show he would be harmed because alleged discriminatory*

*policy is still in force*).   Thus, to have standing to assert claims for injunctive relief, Plaintiffs must be actively seeking work at LTI and be able to show they would be subject to future harm **because the alleged policy is still in force**.   *Id.; see also Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (former employees that are *not* in the process of seeking reinstatement do not have standing to seek injunctive relief); *cf. Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 344-45 (2d Cir. 1998) (plaintiff seeking injunctive relief "must show a likelihood that he or she will be injured in the future"). Admittedly, neither Meyenhofer or Ragland is seeking reinstatement at the present time. Amended Complaint, ¶ 36.

Accordingly, all claims for injunctive relief should be stricken.  Plaintiffs present no reasonably certain basis to conclude that they have a personal need for injunctive relief, and their Prayer for Relief, Sections e. through f. of the Complaint (e.g., for a permanent injunction barring LTI from "engaging in unlawful policies," for an order forcing LTI to adopt "a valid, non-discriminatory method for hiring, placement, termination, and other employment decisions," for an order requiring LTI to post non-discrimination notices, and for an order requiring LTI not to retaliate against individuals who complain of racial, national origin and citizenship discrimination) should be stricken.

## IX.   IMPERTINENT ALLEGATIONS REGARDING ALLEGED VISA FRAUD, WITH NO BEARING ON THE ALLEGATIONS OF DISCRIMINATION, SHOULD BE STRICKEN

Plaintiffs allege (inaccurately) that LTI is the "subject of an advanced multiagency federal criminal investigation" related to alleged "fraudulent practices" in connection with securing visas for its employees.  Amended Complaint, ¶ ¶ 16-19.  Plaintiffs embedded a photograph in the pleadings as an obvious attempt to inappropriately imply unlawful conduct.  Amended Complaint, ¶ 18.  They allege "on information and belief" that LTI, and not its clients, sign "invitation" letters to secure visas.  Amended Complaint, ¶ 16.  Not only is the process of securing visas irrelevant to this case, Plaintiffs clearly have no evidence that LTI secures invitation letters "fraudulently."   Inaccurate and unsourced

"reports" regarding these visa letters (Amended Complaint, ¶ 17) are simply immaterial to any issue in this case.

Each of these allegations and the embedded picture have no place in the Amended Complaint.  Whether LTI engages in visa fraud (it does not), or is "under investigation" has no bearing on whether LTI discriminates against non-South Asians, non-Indians, or U.S. citizens.  Plaintiffs have no standing to, and are not bringing claims for, visa fraud. *See Biran v. JP Morgan Chase & Co*., No. 02 civ. 5506 SHS, 2002 U.S. Dist. LEXIS 17076, at *2-7 (S.D.N.Y. Sept. 12, 2002) (court granted motion to dismiss for lack of subject matter jurisdiction noting that Congress did not create a private right of action for alleged visa fraud); s*ee also Venkatraman v. REI Sys*., 417 F.3d 418, 423-25 (4th Cir. 2005) (U.S. citizen could not state a claim against former employer for supposed misuse of visa program since no private right of action existed).

Accordingly, the visa fraud allegations are immaterial, impertinent and scandalous and are simply a blatant and shameful attempt to embarrass and prejudice LTI.  They should be stricken from the Amended Complaint in their entirety.  See *Gleason v. Chain Serv. Rest.*, 300 F. Supp. 1241, 1259-60 (S.D.N.Y. 1969) (impertinent allegations of misconduct, which were alleged to be "under investigation" and which were irrelevant or of doubtful relevance to the issues in the case, were stricken from the complaint);  *Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, No. 03 Civ. 15 (RWS), 2007 U.S. Dist. LEXIS 42639, at *7-8 (S.D.N.Y., June 11, 2007) (the "descriptive" word "improper" [like "fraudulent" here] without legal significance or factual support is scandalous and was stricken from complaint).

## X.      CONCLUSION

For the foregoing reasons, LTI respectfully requests that the Court dismiss Meyenhofer's Title VII claims (Counts Two and Three), dismiss Meyenhofer's Section 1981 claim (Count One), dismiss Ragland's claims based on an alleged "failure to hire" (Counts One, Two and Three), dismiss Meyenhofer's claims based on a failure to hire

(Counts One, Two and Three), dismiss Plaintiffs' Section 1981 claims alleging discrimination against "U.S. citizens" (Count One), strike all claims for injunctive relief, and strike all allegations of alleged visa fraud.

Dated:   February 3, 2020                LOEB & LOEB LLP
                                         MICHELLE M. LA MAR
                                         TERRY D. GARNETT
                                         BRADLEY J. RABOIN


                                         By: /s/ Michelle M. La Mar
                                             Michelle M. La Mar (*pro hac vice*)
                                             Terry D. Garnett (*pro hac vice*)
                                             Bradley J. Raboin (*pro hac vice*)
                                             LOEB & Loeb LLP
                                             345 Park Avenue
                                             New York, NY 10154
                                             Telephone: (212) 407-4000
                                             Facsimile: (212) 407-4990
                                             Email: mlamar@loeb.com
                                             Email: tgarnett@loeb.com
                                             Email: braboin@loeb.com

                                             *Attorneys for Larsen & Toubro Infotech*
                                             *Ltd. and Larsen & Toubro Infotech LLC*

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing were served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system on February 3, 2020.


Dated:  February 3, 2020                 */s/ Michelle M. La Mar* _____
                                         Michelle M. La Mar