```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/30/20
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Meyenhoffer, *et al.*,

                        Plaintiffs,

         –v–

Larsen & Toubro Infotech Limited, *et al.*,

                        Defendants.

19-cv-9349 (AJN)

MEMORANDUM
OPINION & ORDER

---

ALISON J. NATHAN, District Judge:

    Plaintiffs bring claims against Defendants for employment discrimination under Title VII of the Civil Rights Act of 1964 and Section 1981 of the Civil Rights Act of 1866, alleging that Defendants preferentially hire, promote, and retain persons of South Asian descent from India who are in the United States with work visas. Defendants move to dismiss certain claims for failure to state a claim and move to strike portions of the Complaint. For the reasons stated below, Defendants motion is GRANTED IN PART and DENIED IN PART.

### I. Background

    The following facts are drawn from Plaintiffs' Amended Complaint. Dkt. No. 32. Plaintiffs Markus Meyenhoffer and Andrew Ragland bring claims for discrimination against Defendants Larsen & Toubro Infotech Limited and its subsidiary Larsen & Toubro Infotech LLC (collectively, "LTI") under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, *et seq.*, ("Title VII"), and Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981"). Amended Complaint ¶ 1-2.

1

LTI is an Indian company with primary headquarters in Mumbai and a U.S. headquarters in New Jersey. *Id.* ¶ 1, 5-6. LTI generated 69% of its $1.35 billion revenue in the fiscal year 2018 in the United States, where it provides information technology ("IT") services to clients such as Apple, Inc. *Id.* ¶ 1, 10, 17. LTI staffs clients' projects with existing LTI employees as well as external applicants who interviewed for the position. *Id.* ¶ 11. After a project is finished, the employees are "benched" and must reapply for positions on a new project. *Id.* If the employee is not placed on a new project after an extended period of time, LTI terminates their employment. *Id.*

Plaintiffs Meyenhoffer and Ragland are Caucasian and natural born citizens of the United States. *Id.* ¶ 3-4. They argue that Defendants discriminated against them on the basis of their race, national origin, and citizenship status as a part of its policy and practice of preferentially hiring, staffing, promoting and retaining primarily persons of South Asian descent from India, whom LTI brings to the United States on work visas. *Id.* ¶¶ 12-13.

Plaintiffs allege a four-pronged policy and practice of discrimination by LTI in favor of persons from South Asia (primarily India) who are not U.S. Citizens. First, LTI allegedly maintains an "inventory" of "visa ready" workers from India to fill positions at the company by petitioning the federal government's lottery program to obtain a large amount of H-1b visas, and preferences hiring from this pool of applicants over U.S. citizens and visa-ready individuals not from South Asia (in particular, India). *Id.* ¶¶ 13-15. Plaintiffs allege that Defendants obtained at least some of these visas by submitting fraudulent documents with forged signatures from clients attesting to the amount of personnel needed for projects, leading to LTI securing significantly more visas than it had positions available. *Id.* ¶¶ 16-19. Plaintiffs further allege that Defendants are currently under federal investigation by multiple agencies for this practice. *Id.*

2

Second, LTI's internal and third-party recruiters in the United States disproportionately select South Asian and Indian applicants located in the United States over non-South Asian, non-Indian applicants located in the United States, even if applicants are less qualified. *Id.* ¶ 21. Third, LTI promotes South Asian, Indian, visa holders at disproportionately high rates, in particular by giving these workers higher scores on their quarterly and annual employee appraisals. *Id.* ¶ 22. Fourth, and finally, LTI terminates non-South Asian, non-Indian, and non-visa holders at disproportionately higher rates, in part because these workers are relegated to the "bench" more often and then are not staffed on more projects. *Id.* ¶ 33.

As a result of this four-pronged policy and practice of discrimination, LTI employs a disproportionately high percentage of South Asians and Indians in the United States that far exceeds the proportion of those individuals in the relevant labor market. *Id.* ¶ 21. Specifically, while 12% of the United States' IT industry is South Asian, 95% or more of LTI's workforce is South Asian and is primarily composed of non-citizens form India. *Id.* ¶ 1.

Plaintiffs claim that they were directly harmed as a result of LTI's discriminatory policies and practices in favor of South Asian visa workers from India.

Plaintiff Meyenhoffer is a highly skilled consultant with substantial experience in the banking and financial services industries. *Id.* ¶ 26. He has previously worked for both the American and New York stock exchanges and has provided consulting services to numerous premiere financial institutions, including BNY Mellon, Bank of America Merill Lynch, Credit Suisse, Morgan Stanley and Wells Fargo. *Id.* Plaintiff Meyenhoffer was recruited by Emplofy LLC, a company that identifies and acquires skilled workers for employers, including LTI. *Id.* ¶ 27. In September 2018, Emplofy hired Plaintiff Meyenhoffer to provide services to a client of

LTI's, Broadridge Financial Services, Inc. *Id.* In particular, he was to oversee quality assurance testing for a wealth management platformed being developed for Broadridge. *Id.* ¶ 31.

Though he was hired by Emplofy and received payment through Emplofy, Plaintiff Meyenhoffer says he "was in fact one of LTI's contractual employees." *Id.* During the hiring process, three LTI employees interviewed him. *Id.* The first of approximately five weeks of his employment were performed onsite at LTI's New Jersey Offices before transitioning to the client's offices. *Id.* ¶ 29. LTI employees provided Plaintiff Meyenhoffer with technical support and training, and also offered him a computer. *Id.* ¶ 28. Though he chose to use his own computer, the "installation process" was handled by LTI tech support personal. *Id.* Throughout his work on the Broadridge project, LTI "assigned him tasks," "oversaw. . . his day to day work," and could "unilaterally change the scope of his responsibilities." *Id.* ¶ 29. He reported to LTI managers. *Id.* His hours were set by LTI and he was required to fill out LTI timesheets on an LTI-operated online portal. *Id.* Lastly, his position with Emplofy ended when his role at LTI ended. *Id.* ¶ 27. LTI itself refers to workers like Plaintiff Meyenhoffer, of which there are about 1,200 at the company, as "contractual employees". *Id.* ¶ 30.

Initially, Plaintiff Meyenhoffer was one of six LTI employees staffed on the Broadridge project, two of whom were South Asian and Indian. *Id.* ¶ 32. In January of 2019, LTI put a different manager on the project, and that new manager added sixteen additional employees to the project between January and April 2019, the majority of whom were South Asian and Indian. *Id.* ¶ 32.

While Plaintiff Meyenhoffer was working on the project, he performed well – despite the fact that his duties were repeatedly changed and he was shifted to various roles due to "LTI's ineffective management of the Broadridge account," – and received no negative feedback from

either LTI or the client.  *Id.* ¶ 31.  Nonetheless, in April 2019, LTI assigned a South Asian and Indian employee to the project to take over some of Plaintiff Meyenhoffer's responsibilities, despite the fact that the employee had no prior wealth management experience. *Id.* ¶ 33.  Then LTI took Plaintiff Meyenhoffer off the project and replaced him with another employee who is also South Asian and of Indian national origin and who was "significantly less experienced" than Plaintiff.  *Id.* ¶ 33-34.

On May 15, 2019, Plaintiff Meyenhoffer submitted an application through Quantum World Technologies Inc., a company that recruits applicants for LTI, for a Senior Wealth Management Business Analyst position with LTI, that would entail providing consulting services for one of LTI's clients, City National Bank.  *Id.* ¶ 35.  Plaintiff Meyenhoffer, who was well qualified because of his wealth management experience, completed the preliminary interview with Quantum and proceeded to the follow-up interview with LTI.  *Id*.  Though he performed well in the interview and was told that LTI would follow up with him about the role, he never heard from LTI.  *Id*.  Plaintiff Meyenhoffer alleges he was not hired due to LTI's discriminatory practices.  *Id*.

Plaintiff Ragland describes a similar experience with LTI.  He is a highly skilled worker in the area of operations and delivery management with almost 30 years of professional experience.  *Id.* ¶ 37.  He specializes in installation and set-up, testing and evaluation, support system and database report programming, and incident and problem management of second and third level command centers.  *Id*.  He was hired by LTI in December 2017 to service LTI client Iconix Brand Group in New York, and was told he would be part of a three-year contract with the client.  *Id.* ¶ 38.

Plaintiff Ragland was to serve as IT Operations manager for the project. He had two immediate supervisors, both of whom are South Asian and Indian and resided in India at the time. *Id.* ¶ 39. One of those supervisors had initially been Mr. Ragland's peer, but was later promoted to the managerial position. *Id*. Plaintiff Ragland describes working at the client site with approximately eight other LTI employees who were South Asian and Indian. *Id.* ¶ 40. Plaintiff Ragland was also in charge of overseeing LTI's offshore team, which was a group of approximately twenty individuals in India. *Id.*

Despite the fact that Plaintiff Ragland performed strongly in his position, impressed the client, and never received any negative feedback from either the client or LTI, he was never promoted by LTI. *Id.* ¶ 42. LTI instead provided him with a rating of "acceptable" on his 2018 year-end appraisal, and as a result he did not receive a bonus at the end of the year. *Id.*

After the project with Iconix Brand Group was over, LTI relegated Plaintiff Ragland to the bench and did not invite him to interview for any more projects, leading to his termination on March 8, 2019. *Id.* ¶ 43. Plaintiff Ragland's manager, who is South Asian and Indian, as well as the entire offshore Indian team, were quickly reallocated to other client projects. *Id.* ¶ 44. Plaintiff Ragland argues he was terminated based on LTI's discriminatory practices.

Plaintiffs Meyenhoffer and Ragland filed a Complaint with this Court on October 9, 2019. Dkt. No. 1. Defendants filed a motion to dismiss on December 5, 2019, and Plaintiffs filed an Amended Complaint on December 19, 2019. Dkt. Nos. 27, 32. In the Amended Complaint, Plaintiff brings claims against Defendants for (1) disparate treatment on the basis of race and citizenship in violation of 42 U.S.C. § 1981, (2) disparate treatment on the basis of race and national origin in violation of Title VII, and (3) disparate impact on the basis of race and national origin in violation of Title VII, seeking injunctive and monetary relief. Dkt. No. 27. On

February 2, 2020, Defendants filed a partial motion to dismiss certain claims in the Amended Complaint.  Dkt. No. 35.

**II.    Discussion**

Defendants move to dismiss Plaintiff Meyenhoffer's Title VII claims, both Plaintiffs' Title VII claims to the extent they are based on hiring discrimination, and both Plaintiffs' Section 1981 claims to the extent they are based on Plaintiffs' status as U.S. Citizens.  Defendants also argue that neither Plaintiffs have standing to seek injunctive relief.  Lastly, Defendants move to strike a number of statements in the Amended Complaint.

For the reasons described below, the Court grants Defendants motion to dismiss Plaintiff Ragland's Title VII claims to the extent they are based on hiring discrimination and both Plaintiffs' Section 1981 claims to the extent they are based on Plaintiff's status as U.S. Citizens, and denies the rest of the motion.

**A.    Defendants motion to dismiss for failure to state a claim under Rule 12(b)(6)**

Defendants' move to dismiss some of the claims in Plaintiffs' Amended Complaint for failure to state a claim.  To survive a motion to dismiss under Rule 12(b)(6), the Plaintiff must provide "sufficient factual matter" in its complaint to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Plaintiff must provide enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss under Rule 12(b)(6), "a court must accept as true all of the [factual] allegations contained in [the] complaint[.]" *Id.* at 678.  However, the plaintiff must provide more than just "labels and conclusions," *Twombly,* 550 U.S. at 555, as "[t]hreadbare

7

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 554 U.S. at 678.

Defendants argue that (1) Plaintiff Meyenhoffer has not stated a claim for relief under Title VII because he has not plausibly alleged that he is an employee for purposes of that statute, (2) neither Plaintiff has stated a claim for hiring discrimination under either statute because they have not plausibly alleged that they were discriminated against in hiring decisions, and (3) neither Plaintiff has stated a claim for discrimination under Section 1981 on the basis of citizenship because natural born U.S. Citizens are not a protected class under Section 1981. Dkt. No. 35. The Court agrees with Defendant that Plaintiff Ragland has not stated a claim for hiring discrimination and that neither Plaintiff has stated a claim for discrimination on the basis of citizenship, but otherwise denies Defendants' motion to dismiss for failure to state a claim.

### 1. Plaintiff Meyenhoffer has plausibly alleged that he is an employee

Defendants argue that Plaintiff Meyenhoffer cannot bring a claim under Title VII because he is an independent contractor, not an employee. As Defendants correctly assert, only employees can bring a claim for employment discrimination under Title VII. *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113 (2d Cir. 2000) ("Title VII . . . cover[s] employees, not independent contractors.") (quotations omitted). Defendants point out that in Plaintiffs' first Complaint referred to him as a "contractor," and for that reason and the nature of Plaintiff's work he should be considered an independent contractor. Dkt. No. 35.

At this stage of the litigation, however, Plaintiff Meyenhoffer has plausibly alleged that he is an employee of Defendants.

Determining whether a person is an employee under Title VII is a fact intensive determination that "requires the application of the common law of agency," *id.*, as set forth in the

8

thirteen-factor test established by the Supreme Court in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989).  These factors include:

> "[1] the hiring party's right to control the manner and means by which the product is accomplished ... [;][2] the skill required; [3] the source of the instrumentalities and tools; [4] the location of the work; [5] the duration of the relationship between the parties; [6] whether the hiring party has the right to assign additional projects to the hired party; [7] the extent of the hired party's discretion over when and how long to work; [8] the method of payment; [9] the hired party's role in hiring and paying assistants; [10] whether the work is part of the regular business of the hiring party; [11] whether the hiring party is in business; [12] the provision of employee benefits; and [13] the tax treatment of the hired party." *Id.* at 751-52.

In applying the *Reid* factors to anti-discrimination cases, the court is to give "added weight" to the first factor – the hiring party's right to control the manner and means of work – due to its quintessential importance in the common law conception of an employee-employer relationship.  *Eisenberg*, 137 F.3d at 114-16.  Furthermore, in these cases, formalistic factors like employee benefits and tax treatment are not to be rigidly relied upon.  *Id.* at 115-16.  The *Reid* factors do not apply, however, unless the relationship "plausibly approximate[s] the employee relationship" in the first place, namely the worker must be hired by and receive some form of renumeration from the putative employer.  *O'Connor v. Davis*, 126 F.3d 112, 115-16 (1997).

As a preliminary matter, Defendants argue that the Court need not apply the *Reid* factors at all, because it was Emplofy who hired and paid Plaintiff, not LTI, and thus their relationship does not plausibly approximate that of employer-employee.  *See id*.  The Court rejects this contention because the facts alleged in the Complaint do not necessarily demonstrate that Emplofy was the one who hired or paid Plaintiff Meyenhoffer.  "[A]n employer is someone who pays, directly or indirectly, wages or a salary or other compensation to . . . the employee." *Lippold v. Duggal Color Projects, Inc.*, 1998 WL 13854, at *2 (S.D.N.Y. Jan. 15, 1998) (quoting

*Graves v. Women's Prof'l Rodeo Ass'n, Inc.*, 907 F.2d 71, 72 (8th Cir. 1990)).  While companies like Emplofy seek out applicants for LTI, Plaintiff Meyenhoffer alleges that LTI interviews the applicants and has the final say in the hiring process.  Amended Complaint ¶ 27.  And though Plaintiff technically was handed his paycheck by Emplofy, his relationship with Emplofy ended simultaneously with his relationship with LTI, suggesting that the renumeration might have simply flowed through Emplofy to Plaintiff while he was working for LTI.  *Id.*  Plaintiff Meyenhoffer has therefore at least plausibly alleged that LTI was his employer because LTI was the entity ultimately responsible for hiring him and because he was "compensated . . . with funds provided by" LTI.  *Gaffney v. Dep't of Info. Tech. & Telecommunications,* 536 F. Supp. 2d 445, 461 (S.D.N.Y. 2008).  LTI may choose to outsource its recruitment and payroll functions, but that does not mean that as a matter of law that LTI is not an employer.  *See id* (holding that plaintiffs "were employees . . . under Title VII" because "drawing all inferences in favor of Plaintiffs, the remuneration threshold is met because" the putative employer "transferred funds to" an "administrator" for "the salary and benefit payments of" employees).  To hold otherwise would allow employers to insulate themselves from Title VII liability simply by using a flow-through entity to pay employees.  *Cf. Eisenberg*, 237 F.3d at 116 (explaining that if "benefits and tax treatment factors [were] accorded extra weight" in the determination of whether an individual was an employee or independent contractor, an employer could determine "whether the workers will be regarded as independent contractors or employees" simply "by adjusting the structure of workers' compensation packages.").

Applying the *Reid* factors to Plaintiff Meyenhoffer's Amended Complaint, the Court determines that he has alleged sufficient facts at the pleading stage to establish that he was an employee.  As to the first and most important factor, see *Eisenberg*, 237 F.3d at 114-116,

Plaintiff has alleged sufficient facts to establish that LTI controlled the "manner and means" in which he worked. The complaint alleges that LTI assigned the Plaintiff tasks and controlled his responsibilities (which LTI could and did unilaterally change on different occasions), he reported to LTI managers who oversaw his day-to-day work, LTI set and kept track of his hours, and he worked at LTI's offices for a portion of the project. Amended Complaint ¶ 29. LTI also provided him training and provided him technological assistance. *Id.* ¶ 28. To be sure, some aspects of his contractual relationship with LTI sound in the nature of independent contractor: LTI hires workers on a project-to-project basis, Plaintiff Meyenhoffer is a highly skilled individual, and he used his own computer (though he had the option of using LTI's). *Id.* ¶ 28. But at this stage, Plaintiff has provided sufficient facts to plausibly allege that LTI was his employer for purposes of Title VII.

Defendants arguments to the contrary are unpersuasive. First, Defendants contend that Plaintiff made an admission in his initial complaint that "Mr. Meyenhofer worked for LTI as a contractor. . ." Complaint ¶ 24. This statement, however, does not determine Plaintiff's status as an employee for purposes of Title VII. "[W]hether workers are employees or independent contractors—is a question of law," *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1059 (2d Cir.1988), which courts determine in this context by balancing the aforementioned *Reid* factors. Therefore, what Plaintiff, Defendant, or anyone else labeled Plaintiff Meyenhoffer is not dispositive. *Cf. Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947) ("Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of [FLSA]."). Instead, the Court will analyze whether Plaintiff Meyenhoffer provided sufficient facts in the complaint to plausibly allege an employee-employer relationship, and the Court concludes that he did so here.

In addition to arguing that Plaintiff cannot bring a claim under Title VII because he is not an employee, Defendants argue that he also cannot bring a claim under Section 1981 because he did not allege that he and Defendants had the type of contract necessary for him to bring that sort of claim. The Court rejects this argument as well because, as explained above, Plaintiff Meyenhoffer has plausibly alleged that he is an employee, and discriminatory termination of an employment contract is a sufficient basis for bringing a claim under Section 1981. *See Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258, 261 (2d Cir. 2000).

### 2. Plaintiff Meyenhoffer has plausibly alleged hiring discrimination, but Plaintiff Ragland has not.

For both of their Title VII and Section 1981 claims, Plaintiffs claim that Defendants engaged in discriminatory hiring decisions. "In the context of a claim for failure to hire, a plaintiff complaining of a discriminatory failure to hire must first make out a prima facie case of discrimination by showing that (1) he is a member of a protected class, (2) he was qualified for the job for which he applied, (3) he was denied the job, and (4) the denial occurred under circumstances that give rise to an inference of invidious discrimination." *Szewczyk v. City of New York*, at *4 (E.D.N.Y. July 14, 2016) (quoting *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010)).

Defendants argue that neither Plaintiff Meyenhoffer nor Plaintiff Ragland can bring these claims because neither was actually denied the opportunity to be hired by LTI. A prima facie case of hiring discrimination, as described above, requires showing that a person "applied for an available position for which [they were] qualified" but was "rejected." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Plaintiff Meyenhoffer, Defendants argue, was hired by Quantum and not LTI, and Plaintiff Ragland was hired for the only position to which he applied.

12

The Court rejects the Defendants argument as to Plaintiff Meyenhoffer. Based on the facts provided in his Complaint, it is plausible that Plaintiff Meyenhoffer did in fact apply for a position with Defendant LTI for which he was rejected. While Plaintiff Meyenhoffer "submitted his application through Quantum," it was for a position that "entailed employment by LTI" and for which he completed a secondary interview with LTI, and he was told by LTI that he would receive follow up correspondence. Amended Complaint ¶ 35. As discussed above with regards to Emplofy, the fact that LTI may have outsourced a portion of the recruiting and vetting process to Quantum does not mean that as a matter of law it was not ultimately responsible for the decision to hire Plaintiff Meyenhoffer. *See supra* II.A.1.

However, the Defendants are correct as to Plaintiff Ragland. As Plaintiff Ragland does not contest, the facts in his Amended Complaint show that he was hired by LTI for the only position to which he applied. Amended Complaint ¶ 38. He therefore cannot state a claim for hiring discrimination because he has not shown that he was "denied the job" to "which he applied." *Szewczyk,* 2016 WL 3920216, at *4.

Plaintiffs argue in response that Defendant LTI "preferentially staffs client projects with South Asians, Indians, and [visa holders]," Dkt. No. 43 at 13, and that the failure to staff Plaintiff Ragland on more projects lead to his termination. But those are allegations of discrimination in promotion, staffing, and retention for *existing* employees, not discrimination against applicants looking to be hired by the company. *See, e.g., Brown v. Coach Stores, Inc.,* 163 F.3d 706, 709 (2d Cir. 1998) (elements of a failure to promote claim); *Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir. 1985) (elements of a discriminatory discharge claim). Plaintiff Ragland may assert these allegations in support of his claims that Defendants failed to promote him and fired him for discriminatory purposes, *see* Amended Complaint at ¶¶ 58, 63, 68, but he cannot claim that

13

Defendants failed to hire him for discriminatory purposes when they never failed to hire him at all.

Additionally, to the extent Defendants argue that, as a result of this Court dismissing his claims for hiring discrimination, Plaintiff Ragland is now unable to represent the purported class of persons, the Court declines to resolve any objections to the putative class at this time. Defendants may renew their arguments in response to Plaintiffs' motion for class certification.

### 3. Neither Plaintiff can allege claims for discrimination on the basis of citizenship because U.S. Citizens are not a protected class under Section 1981

Plaintiffs allege that Defendants "engaged in a pattern of practice of discriminating against individuals who are citizens of the United States" in violation of Section 1981 of the Civil Rights Act of 1866. Amended Complaint ¶ 58.

Plaintiffs' claims must be dismissed because, while the Second Circuit has held that Section 1981 prevents discrimination "on the basis of alienage," *Anderson v. Conboy*, 156 F.3d 167, 180 (2d Cir. 1998), there is no authority in this Circuit to support that Section 1981 prohibits discrimination against natural born U.S. Citizens. *See Maack v. Wyckoff Heights Med. Ctr.*, 2016 WL 3509338, at *15 (S.D.N.Y. June 21, 2016) (determining that a plaintiff's claim was not cognizable because "the Court has not identified, and Plaintiff has not submitted, any precedent in this Circuit establishing that Section 1981's prohibition of alienage discrimination extends to naturalized U.S. citizens."). *See also Vaughn v. City of New York*, No. 06-CV-6547 (ILG), 2010 WL 2076926, at *10 (E.D.N.Y. May 24, 2010) (interpreting *Anderson* to mean that Section 1981 prevents "discrimination on the basis of alienage, i.e. non-U.S. citizenship.").

Plaintiffs contend that this Court is nonetheless bound to the conclusion that Section 1981 protects U.S. Citizens by the reasoning of the Supreme Court in *McDonald v. Santa Fe Trail*

14

*Trans. Co.* 427 U.S. 273, 287 (1976).  In that case, the Court held that Section 1981 protects white persons, in addition to non-white persons, from discrimination.  427 U.S. 273, 287 (1976).  Other courts have taken the position that "[a]s *McDonald* concluded that the plain language of Section 1981 prohibits discrimination against persons of all races, and not only non-whites, it is axiomatic that, Section 1981 prohibits discrimination against persons of all citizenships and not only non-Americans."  *Jimenez v. Servicios Agricolas Mex, Inc.*, 742 F. Supp. 2d 1078, 1086 (D. Ariz. 2010).  The Court is not persuaded by this out of Circuit decision, which is in tension with the authority in the Second Circuit.  *See Anderson,* 156 F.3d 167 at 180; *Maack,* 2016 WL 3509338, at *15.  Accordingly, the Section 1981 claims based on discrimination on the basis of U.S. Citizenship are dismissed.

### B. Defendant's Motion to Dismiss Plaintiffs' Claims for Injunctive Relief Due to Lack of Standing

Defendants argue that Plaintiffs lack standing to seek injunctive relief because "aside from a mention in the Prayer for Relief, there is no factual allegation by Plaintiffs that they are actively seeking reinstatement or work from LTI," or that they are actively being harmed by any action of LTI, and therefore Plaintiffs have failed to show an injury in fact that will be redressed by a favorable decision.  Dkt. No. 35 at 11 (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 564 (1992)).

Defendants fail to explain why Plaintiffs asking in their Prayer to Relief to this Court for reinstatement to the positions from which they were allegedly wrongfully terminated is not "actively seeking reinstatement," or cite any source of law for their claim that, outside of explicitly requesting a remedy in their complaint, Plaintiffs need to plead "factual allegations" that they are seeking a particular remedy at all.   They remedy plaintiffs seek in this lawsuit (i.e., reinstatement), *inter alia*, would redress the alleged injury (unlawful termination).  *Lujan*, 504

15

U.S. at 561-62 (asking whether "action or inaction has caused [the party] injury", and whether "a judgment preventing or requiring the action will redress it."). Plaintiffs therefore do not lack standing on the grounds asserted by Defendants.

## C. Defendants' motions to strike.

Finally, Defendants also move to strike various references in the Amended Complaint. Dkt. No. 35. A court, either on its own or by motion of a party, may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Generally, "motions to strike are not favored." *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 2009 WL 5088750, at *1 (S.D.N.Y. Dec. 18, 2009). "[T]he [movant] must demonstrate that no evidence in support of the allegation would be admissible, that the allegations have no bearing on the issues in the case, and that to permit the allegations to stand would result in prejudice to the movant." *Metrokane, Inc. v. The Wine Enthusiast*, 160 F. Supp. 2d 633, 642 (S.D.N.Y. 2001).

The Court denies Defendants' motions to strike. Defendants first argue that, in the event this Court holds that Plaintiff Meyenhoffer has sufficiently alleged that he is an employee for the purposes of Title VII and Section 1981, the Court should strike any reference to "contractors" in the definition of the purported class in the Amended Complaint. Though Defendants style this claim as a motion to strike, this argument is actually a challenge to the scope of class certification, and therefore the Court will not consider it at this time. Defendants may renew this argument in their response to Plaintiffs motion for class certification.

Additionally, Defendants move to strike all references to alleged visa fraud committed by LTI and any purported federal investigations thereof, because they are "immaterial, impertinent and scandalous and are simply a blatant and shameful attempt to embarrass and prejudice LTI." Dkt. No. 35 at 13. Defendants have not met the high bar of showing that striking allegations in

16

Plaintiffs' Amended Complaint is appropriate. *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("[C]ourts should not tamper with the pleadings unless there is a strong reason for so doing.").

First, these allegations are material to Plaintiff's claims. A major component of LTI's alleged discriminatory scheme is its practice of maintaining a large pool of visa ready workers to fill its hiring preferences, and the alleged visa fraud is the means by which LTI is able to do so. *Metrokane, Inc.*, 160 F. Supp. 2d at 642 (declining to strike where the material "clearly bear[s] on the overall issues of the case."). Second, despite whether the allegations may be "embarrass[ing]," Defendants have not shown that they will cause prejudice to them in this this case. As Plaintiffs show, that the federal investigation is already public. To the extent that Defendants are concerned that these allegations could improperly influence a jury, evidentiary claims that the allegations probative value is outweighed by the potential for prejudice are properly reserved for trial.

### III. Conclusion

For the reasons stated above, Defendants' motion to dismiss Plaintiff Ragland's claim for hiring discrimination under Title VII and Section 1981 and both Plaintiffs' claims for discrimination on the basis of citizenship under Section 1981 is GRANTED. The rest of Defendants' motion is DENIED. This resolves docket numbers 27 and 35.

The initial conference in this matter, originally scheduled for March 13, 2020, was adjourned sine die. *See* Dkt. 30. The Court will schedule an Initial Pretrial Conference by separate order.

SO ORDERED.

Dated: November 30, 2020
       New York, New York

_____
ALISON J. NATHAN
United States District Judge